******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HILARY I. PROSPER
(AC 35943)

Sheldon, Keller and Norcott, Js.

*Argued May 20—officially released September 22, 2015*

(Appeal from Superior Court, judicial district of New Haven, O'Keefe, J.)

*Bradford Barneys*, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Hilary I. Prosper, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the state produced insufficient evidence to sustain his conviction on any of the charges, and (2) the court improperly permitted a witness to testify as both a fact witness and an expert witness. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. In June, 2009, when the victim, A,[1] was twelve years old, she went to her grandparents' house after school on days when both of her parents were working. Her grandparents lived in the second-floor apartment of a two-family house. A's aunt and her aunt's husband, the defendant, lived in the first-floor apartment with their child, J, who was three years old. Although A went to visit her grandparents on the second floor, she also went downstairs to the first-floor apartment to visit J and to play on the computer. The defendant was usually present when A was downstairs. During these visits, her aunt was usually at work.

On one occasion in June, 2009, A was playing with J in the living room downstairs when the defendant told her "to come see something." She went into the room where the defendant was on the computer and saw that the defendant was viewing a pornography website with videos showing "[m]en and women doing things, having sex." She then walked out of the room. The defendant did not say anything else to her, and she did not say anything to him.

On another occasion in June, 2009, A was sitting at the computer when the defendant got out of the shower and came into the room, wearing only a towel. He made a gesture with his hands that A did not understand and asked her if she wanted "to join hands." He then rubbed her shoulders as she was sitting in the computer chair. A felt "confused and weird" while the defendant was rubbing her shoulders. She did not say anything to him and walked out of the room.

A couple of weeks later, A was sitting at the computer when the defendant again got out of the shower and came into the room, wearing only a towel. He rubbed A's shoulders and then moved his hands down the front of her chest to touch her breasts. He squeezed both of her breasts at the same time. A stood up and walked out of the room. As she was walking away, the defendant asked, "Can you handle it?" He also told her not to tell anyone what had happened, or she would get in trouble.

On yet another occasion in June, 2009, A was sitting

at the computer when the defendant came into the room, wearing only a towel, and said something to her "that was weird." She went into the living room and sat on the couch. The defendant stood in front of her and pushed her down by the shoulders onto the couch so that she was lying on her back. He pulled her shorts and underwear down to her ankles. He then removed the towel, and A saw that he was wearing a condom on his penis. He lay on top of her, opened her legs by pressing on her inner thighs, and inserted his penis into her vagina. This caused A pain. The defendant moved his penis in and out of her vagina. He stopped when A pushed against his chest, and he got off the couch.

A went upstairs to the bathroom in her grandparents' apartment because she "didn't want to talk to anybody." She noticed that she was bleeding from her vagina, and she wiped up the blood with toilet paper. She did not tell anyone what had happened because she was "scared to."

A first told one of her cousins about these series of events with the defendant, but she only said that the defendant had touched her. She then told another cousin that the defendant had touched her. She fully disclosed the defendant's conduct toward her in a letter to another cousin, who gave the letter to A's parents.

On July 31, 2009, Theresa Montelli, a medical social worker at Yale New Haven Hospital's Child Sexual Abuse Evaluation Clinic (clinic), conducted a forensic interview with A. A did not tell Montelli everything about the defendant's conduct. On December 1, 2009, Montelli conducted a second forensic interview with A. During the second interview, A told Montelli: "My uncle raped me." Both forensic interviews were video-taped and shown to the jury at trial. On the same day as the second forensic interview, A underwent a medical examination by Janet Murphy, a pediatric nurse prac-titioner at the clinic. Murphy concluded that A had a "normal exam." Murphy did not find "any kind of mark or sign . . . from any kind of injury."

The defendant thereafter was arrested and charged with one count of sexual assault in the first degree and two counts of risk of injury to a child. He was tried before a jury and found guilty on all three charges. The court sentenced him to a total effective sentence of ten years incarceration, followed by fifteen years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the state produced insufficient evidence to sustain his conviction on any of the charges. With respect to the charge of sexual assault in the first degree, the defendant argues that there was insufficient evidence that he was more than two years older than A at the time he had sexual inter-

course with her. With respect to all the charges, the defendant argues that there was insufficient evidence that he engaged in the prohibited conduct alleged by the state.

A

We first address the defendant's claim that there was insufficient evidence to sustain his conviction for sexual assault in the first degree because the state failed to prove beyond a reasonable doubt that he was more than two years older than A. Specifically, the defendant argues that the state failed to present any evidence as to the defendant's age in its case-in-chief. The defendant further argues that the court violated his rights to due process and a fair trial by permitting the state to reopen its case and to present evidence of his age to the jury. We are not persuaded.

General Statutes § 53a-70 (a) (2) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." At trial, after the state presented its case-in-chief, the defendant moved for a judgment of acquittal on the ground that the state had failed to present any evidence as to the defendant's age. The state conceded that it had failed to present *direct* evidence of the defendant's age and requested that the court allow it to reopen its case-in-chief. The court found that the state had presented sufficient circumstantial evidence for the jury to conclude that the defendant was more than two years older than A at the time he had sexual intercourse with her. The court found on that basis that allowing the state to reopen its case would not prejudice the defendant. The court stated: "Well, I don't see any problem reopening the case. I don't agree that there's no evidence of his age. I mean, circumstantially he's the brother of the complainant's mother. He has a—he has a three year old child—what was a three year old child at the time of the complaint, and if he—if he wasn't more than two years old—older than the complainant, he would have been making babies when he was eleven [years old] or something, I don't know. It's—There's no prejudice to the defendant to—for someone to say— take the stand and say that he's, I'm guessing, forty years old." The court characterized the state's failure to present direct evidence of the defendant's age as "a simple oversight" and, over the defendant's objection, permitted the state to reopen its case. The state then presented evidence of the defendant's date of birth to the jury.

To address this claim, we must first determine whether the court properly permitted the state to reopen its case. "The decision to reopen a criminal case to add further testimony lies within the sound discretion

of the trial court. . . . The trial judge's discretion, which is a legal discretion, should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The purpose of this discretion is to preserve the fundamental integrity of the trial's truth-finding function. . . . The trial court's discretion will be reversed only upon manifest abuse of discretion or injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Zoravali*, 34 Conn. App. 428, 442, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994).

"[I]f a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Internal quotation marks omitted.) Id., 441. "If the trial court finds that inadvertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur, it is vested with the discretion to reopen the case." (Internal quotation marks omitted.) *State* v. *Anderson*, 209 Conn. 622, 634–35, 553 A.2d 589 (1989).

In the present case, the court found that the state's failure to present direct evidence of the defendant's age was inadvertent—"a simple oversight"—and that the defendant would not be prejudiced if the state reopened its case. Under the circumstances, we cannot say that the court's decision to permit the state to reopen its case was a manifest abuse of discretion. Accordingly, we conclude that the court properly permitted the state to reopen its case.

The defendant argues that our Supreme Court's decision in *State* v. *Allen*, 205 Conn. 370, 385, 533 A.2d 559 (1987), controls this case. In *Allen*, our Supreme Court held that, "when the state has failed to make out a prima facie case because insufficient evidence has been introduced concerning an essential element of a crime and the defendant has specifically identified this evidentiary gap in a motion for judgment of acquittal, it is an abuse of the trial court's discretion to permit a reopening of the case to supply the missing evidence." Id. We agree with the defendant that he identified an alleged evidentiary gap in the state's case in his motion for a judgment of acquittal, namely, that the state had failed to present any direct evidence that the defendant was more than two years older than A at the time he had sexual intercourse with her. We also recognize that an age difference of more than two years between the complainant and the perpetrator of the sexual assault is an essential element of § 53a-70 (a) (2). We conclude, however, that our Supreme Court's holding in *Allen* does not control this case because the state successfully

presented a prima facie case against the defendant on the sexual assault charge, including the fact that he was more than two years older than A when he had sexual intercourse with her.

The court found that the state had presented sufficient circumstantial evidence for the jury to find that the defendant was more than two years older than A. We agree. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

In June, 2009, A was twelve years old. Therefore, in

order to convict the defendant of sexual assault in the first degree pursuant to § 53a-70 (a) (2), the state was required to prove beyond a reasonable doubt that the defendant was more than fourteen years old when he had sexual intercourse with A. In its case-in-chief, the state presented evidence that the defendant was married and that he was the father of a three year old child at that time. The jury also had the opportunity to view the defendant, who was present in the courtroom during the trial. See *State* v. *Hollby*, 59 Conn. App. 737, 742, 757 A.2d 1250 (jury's opportunity to view defendant at trial was factor in determining whether there was sufficient evidence for jury to conclude defendant was more than two years older than victim at time of sexual assault), cert. denied, 254 Conn. 947, 762 A.2d 905 (2000). The trial occurred almost four years after the sexual assault. If the defendant had not been more than two years older than A at the time of the assault, he would have been no more than eighteen years old at the time of trial. When the jury viewed him at trial, he was forty-three years old.

"The jury is entitled to draw reasonable and logical inferences from the evidence. [T]he jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . [I]n considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) Id., 743.

In light of the evidence presented, it was reasonable for the jury to conclude that the defendant, who was both married and the father of a three year old child, was more than fourteen years old at the time he had sexual intercourse with A. It was also within the jury's purview to observe the forty-three year old defendant at trial and to determine that, at that time, he was more than eighteen years old. We, therefore, conclude that the state presented a prima facie case that the defendant was more than two years older than A at the time he had sexual intercourse with her. Accordingly, our Supreme Court's decision in *Allen* does not control this issue, and the trial court properly permitted the state to reopen its case to present further evidence of the defendant's age to the jury. We, therefore, further conclude that the state presented sufficient evidence of the defendant's age to sustain his conviction for sexual assault in the first degree.

B

We next address the defendant's claim that, with respect to all the charges against him, the state pro-

duced insufficient evidence that he engaged in the prohibited conduct. Specifically, the defendant argues that there was insufficient evidence to support the state's allegations that he (1) engaged in sexual intercourse with A, (2) had contact with his penis in a sexual and indecent manner with A, and (3) had contact with the breasts and inner thigh of A in an indecent manner. The defendant further argues that the evidence presented by the state, in the form of A's testimony, was "inconsistent and contradictory." In response, the state argues that the defendant's claim merely challenges the jury's determination of A's credibility and is therefore without merit. We agree with the state.

"It is the function of the jury to consider the evidence and to judge the credibility of witnesses." *State* v. *Hoover*, 54 Conn. App. 773, 777, 738 A.2d 685 (1999). "We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

The jury found the defendant guilty of one count of sexual assault in the first degree in violation of § 53a-70 (a) (2). Section 53a-70 (a) (2) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." General Statutes § 53a-65 (2) defines sexual intercourse in relevant part as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. . . . Penetration, however slight, is sufficient to complete vaginal intercourse . . . ." A testified before the jury that the defendant inserted his penis into her vagina and that afterward she bled from her vagina.

The jury also found the defendant guilty of two counts of risk of injury to a child in violation of § 53-21 (a) (2). Pursuant to § 53-21 (a) (2), a person is guilty to risk of injury to a child if he "has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." Section 53a-65 (8) defines intimate parts as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or

breasts." In the second and third counts of the substitute information, the state alleged that the defendant "subjected A . . . to contact with his intimate parts (to wit: his penis), in a sexual and indecent manner" and that he also "had contact with the intimate parts, (to wit: the breasts and inner thigh), of A . . . in a sexual and indecent manner . . . ." A testified before the jury that, on one occasion, the defendant squeezed her breasts and that, on another occasion, he touched her inner thighs to open her legs so he could insert his penis into her vagina.

The jury credited A's testimony about the defendant's conduct when it found the defendant guilty of one count of sexual assault in the first degree and two counts of risk of injury to a child, and we defer to its assessment of her credibility. *State* v. *Osoria*, supra, 86 Conn. App. 515. "The credited testimony of even a single witness may be sufficient to sustain a defendant's conviction." *State* v. *Wilder*, 128 Conn. App. 750, 764, 17 A.3d 1116, cert. denied, 301 Conn. 934, 23 A.3d 730 (2011); see also *State* v. *Whitaker*, 215 Conn. 739, 757 n.18, 578 A.2d 1031 (1990). We, therefore, conclude that the state presented sufficient evidence to sustain the defendant's conviction on all the charges.

## II

The defendant next makes a number of evidentiary claims related to the testimony of Murphy, the pediatric nurse practitioner who conducted A's medical examination. He argues that the court abused its discretion and, alternatively, committed plain error when it permitted Murphy to testify as both a fact witness and an expert witness. The state argues that the defendant's evidentiary claims are not reviewable because they are inadequately briefed. We agree.

"[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011).

It is unclear from the defendant's appellate brief what his evidentiary claims actually are. He provides only bare legal arguments without connecting them to the facts of the case. Specifically, he challenges Murphy's

testimony without identifying the portions of her testimony that, he argues, were improperly admitted. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Diaz*, 94 Conn. App. 582, 593, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006). We conclude that the defendant's evidentiary claims are inadequately briefed, and, accordingly, we decline to review them.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.