STATE OF CONNECTICUT *v.* ROBERT W. SPILLANE
(AC 17194)

Schaller, Spear and Healey, Js.

Submitted on briefs March 21—officially released April 23, 2002

*Joel M. Ellis,* with whom, on the brief, was *Donald E. Weisman,* for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rachel M. Baird*, former assistant state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. This case is before us on remand from our Supreme Court. *State* v. *Spillane*, 255 Conn. 746, 770 A.2d 898 (2001). The defendant, Robert W. Spillane, originally appealed to this court from the judgment of conviction, rendered after a jury trial, of larceny in the third degree in violation of General Statutes § 53a-124 (a).[1] In his original appeal, the defendant claimed that "the trial court improperly (1) denied his motion for acquittal at the end of the state's case-in-chief, (2) denied his motion for acquittal at the conclusion of all of the evidence, (3) omitted from its final jury instructions the definition of 'to deprive' or 'to appropriate' as set out in General Statutes § 53a-118[2] and thus failed to instruct the jury about all of the necessary elements of larceny, (4) denied his motion to strike the testimony of the complaining witness, Webster Lewis, (5) refused to instruct the jury concerning the destruction of certain police tapes and (6) refused to give a missing witness instruction for the state's failure to call the wife of the complaining witness to testify. He also claim[ed] for the first time on appeal that the prosecutor's 'improper' argument deprived him of his due process right to a

[1] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] General Statutes § 53a-118 (a) (4) provides in relevant part: "To 'appropriate' property of another to oneself or a third person means . . . (B) to dispose of the property for the benefit of oneself or a third person. . . ."

fair trial under the United States and Connecticut constitutions." *State* v. *Spillane*, 54 Conn. App. 201, 203, 737 A.2d 479 (1999), rev'd, 255 Conn. 746, 770 A.2d 898 (2001).

We determined that the trial court improperly omitted the definition of the term "appropriate" set forth in § 53a-118 (a) (4) (B) from its instruction to the jury on the elements of larceny, and that it was reasonably possible that the jury was misled by the court's instruction and, therefore, we ordered a new trial.[3] Id., 218–20. On November 2, 1999, our Supreme Court granted the state's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly conclude that the trial court's instructions regarding appropriate were constitutionally inadequate?" and (2) "If the answer to the first question is yes, was the error harmful?" (Internal quotation marks omitted.) *State* v. *Spillane*, 251 Conn. 914, 740 A.2d 866 (1999).

The Supreme Court agreed that the trial court should have defined for the jury the term "appropriate," but it found the improper instruction to have been harmless and therefore it reversed our judgment and remanded the case to us with direction to consider the defendant's remaining grounds for appeal, i.e., (1) "whether the trial court improperly refused to give a missing witness instruction for the state's failure to call the wife of the complaining witness to testify" and (2) "whether the prosecutor's allegedly improper argument deprived the defendant of his due process right to a fair trial under

[3] We rejected the defendant's claim that the trial court improperly denied his motions for a judgment of acquittal; *State* v. *Spillane*, supra, 54 Conn. App. 210; and his interrelated claims concerning the trial court's refusal to instruct the jury about the destruction of the police tapes and its denial of his motion to strike the testimony of the complaining witness, both of which we considered in the event that they were to arise in the new trial that we had ordered. Id., 220–21, 228.

the United States and Connecticut constitutions."[4] *State v. Spillane*, supra, 255 Conn. 762.

The relevant facts underlying the defendant's conviction, as the jury reasonably could have found them, were set out in the Supreme Court's decision as follows. "The defendant operated Walnut Street Services, Inc., a towing company in Hartford. Walnut Street Services, Inc., was authorized by various area businesses, including Mechanics' Savings Bank on Farmington Avenue in Hartford, to tow unauthorized vehicles from their lots during nonbusiness hours.

"Around midnight, on April 27, 1996, Webster Lewis parked his car on the street in front of Mechanics' Savings Bank and entered the apartment of his girlfriend, Andrea Gudealm. When Lewis exited the building, he discovered his car was missing. Gudealm called the police from a nearby pay telephone, and the police gave her the telephone numbers of several tow companies. Upon calling the tow companies, Gudealm located Lewis' car at Walnut Street Services, Inc. The following afternoon, Lewis proceeded to Walnut Street Services, Inc., and paid the defendant's wife, Cheryl Spillane, $148 to retrieve his vehicle. Lewis found his glove compartment open, papers scattered around the car and tools missing from the back of the car. Lewis then called the police, and larceny charges were brought against the defendant.

"The defendant was tried on two counts of larceny in the third degree in violation of § 53a-124 for the wrongful taking of Lewis' car and his tools respectively, as well as on one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts and one count of reckless endangerment in the second

---

[4] Both the state and the defendant have filed supplemental memoranda directed to these two issues.

degree in violation of General Statutes § 53a-64 for an incident that occurred on October 1, 1996. At the close of the state's case, the trial court granted the defendant's motion for judgment of acquittal of the charge of larceny in the third degree with respect to the tools, and the trial continued on the remaining charges of larceny in the third degree stemming from the taking of Lewis' vehicle on April 27, 1996, as well as risk of injury to a child and reckless endangerment in the second degree, both stemming from the October 1, 1996 incident.

"Much of the trial testimony addressed where Lewis' car had been parked when it was towed. If it had been parked in the Mechanics' Savings Bank parking lot, Walnut Street Services, Inc., rightfully towed the vehicle. If, however, it had been parked on the street, as the state claimed, then Walnut Street Services, Inc., wrongfully towed the vehicle. In accordance with Lewis' testimony, the jury found the tow to have been wrongful and, on March 20, 1997, found the defendant guilty of larceny in the third degree. The defendant was found not guilty of the charges of reckless endangerment in the second degree and risk of injury to a child. The defendant was sentenced on May 2, 1997, to a two year suspended sentence and three years probation. He was also ordered to pay Lewis restitution in the amount of $200, participate in an anger management program, and donate $1000 to the Hartford police department outreach program." Id., 749–51. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), overruled in part, *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), the trial court improperly refused to give

a missing witness instruction for the state's failure to call the wife of the complaining witness to testify. The state argues that the defendant's claim was not properly preserved and that the court did not abuse its discretion "because the witness was not one the state would 'naturally' have called."

The defendant failed to raise this claim at trial. Furthermore, in seeking our review of this claim, the defendant fails to request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5.[5] "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding* [supra, 239–40]."[6] (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 598, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). "Where a defendant fails to seek review of an unpreserved claim under either *Golding* or the plain error doctrine, this court will not examine such a claim." *State* v. *Abraham*, 64 Conn. App. 384, 404 n.18, 780 A.2d 223, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001). We therefore decline to review this claim.[7]

---

[5] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[6] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

[7] Even if we were to review the defendant's claim, we would conclude that it lacks merit. The defendant argues that by remanding the "missing witness" issue to this court, the Supreme Court "implicitly determined that

## II

We next turn to the defendant's claim that the prosecutor's improper argument deprived him of his due process right to a fair trial under the United States and Connecticut constitutions.

The defendant raises his claim for the first time on appeal. Furthermore, in seeking our review of his claim, the defendant fails to request review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, or the plain error doctrine. We reiterate that "[w]here a defendant fails to seek review of an unpreserved claim under either *Golding* or the plain error doctrine, this court will not examine such a claim." *State* v. *Abraham*, supra, 64 Conn. App. 404 n.18. We therefore decline to review this claim.

Even if we were to review the defendant's prosecutorial misconduct claim, we would conclude that it lacks merit because the defendant has failed to show that the prosecutor's remarks were improper.

The following additional facts are relevant to the defendant's claim. In its closing argument, the state

[*State* v.] *Malave* [supra, 250 Conn. 722] only had prospective application." In *Malave*, our Supreme Court abandoned, in criminal cases, the *Secondino* rule, also known as the missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference may be drawn from the failure of a party to produce a witness. Id., 738.

Although our Supreme Court to date has not addressed whether *Malave* applies retroactively, we have held on several occasions that *Malave* does apply retroactively. See *State* v. *Walker*, 67 Conn. App. 120, 123, 786 A.2d 1116 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002); *State* v. *Quinones*, 56 Conn. App. 529, 533, 745 A.2d 191 (2000). Moreover, when our Supreme Court intends for a decision to apply prospectively only, it knows how to say so clearly. See *State* v. *Delvalle*, 250 Conn. 466, 475–76, 736 A.2d 125 (1999) ("we . . . direct our trial courts to refrain from using the [jury instruction at issue in that case] in the future"). Therefore, absent a determination by the Supreme Court to the contrary, we conclude that the *Malave* decision applies retroactively to this case. Accordingly, the defendant's "missing witness" claim lacks merit.

argued that the defendant's motive for committing larceny was money and that possession of Lewis' vehicle represented money to the defendant. It argued that the fundamental issue for the jury to decide was whether the defendant towed Lewis' vehicle wrongfully from the street or lawfully from the parking lot. The state further argued that the defendant essentially had a license to steal and that it was "almost the perfect crime" because the defendant could collect cars off the street and receive money from the owners who, like Lewis, just wanted to get their cars back and were unaware that Walnut Street Services, Inc., lacked the authority to tow such cars from the street. The state also observed that Lewis had no motive to cause the defendant's arrest and that he merely wanted his car and tools returned. In its rebuttal argument, the state argued that the jury should not "let this defendant get away with what he did on April 27, 1996, when he made Webster Lewis buy back his own car . . . ." The defendant did not object to any of these remarks.

Prosecutorial misconduct can occur in the course of closing argument. *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "A prosecutor may not appeal to the emotions, passions and prejudices of the jurors." *State* v. *Williams*, 204 Conn. 523, 545, 529 A.2d 653 (1987). Nor should a prose-

cutor "inject extraneous issues into the case that divert the jury from its duty to decide the case on the evidence." Id., 547.

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . In conducting our analysis, we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Garrett*, 42 Conn. App. 507, 515, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996).

In his appellate brief, the defendant claims that the prosecutor committed misconduct by arguing in her summation that the jury "should convict him of a crime with which he was not charged," i.e., extortion,[8] thus injecting an extraneous issue designed to divert the jury from its duty to decide the case on the relevant evidence. Specifically, the defendant argues that the prosecutor "never claimed that the evidence established that [he] was guilty of third degree larceny . . . in regard to Mr. Lewis' car, but, instead, asked the jury to find him guilty of stealing the money Mr. Lewis paid to obtain the release of his car." He further argues that

---

[8] General Statutes § 53a-119 (5) provides in relevant part: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (A) Cause physical injury to some person in the future; or (B) cause damage to property; or (C) engage in other conduct constituting a crime . . . or (I) inflict any other harm which would not benefit the actor."

the prosecutor improperly "asked the jury to find that the defendant's intention was to deprive Mr. Lewis of his car *temporarily*, in order to extract an illegal payment from him for its release." (Emphasis added.) In its appellate brief, the state responds that there was no permanency requirement in the form of larceny at issue and that its summation accurately reflected the "appropriation" form of larceny rather than the "extortion form." We agree with the state.

In its decision, the Supreme Court noted that the "intent to deprive" aspect of larceny was not at issue because the defendant was charged with the "intent to appropriate," which requires an intent to dispose of property for the benefit of oneself or a third person. *State* v. *Spillane*, supra, 255 Conn. 753–54. It also stated that § 53a-118 (a) (4) (B) "contains no permanency element." Id., 761. Therefore, insofar as the defendant asserts a "permanency" argument, it is without merit.

In his reply brief, the defendant argues for the first time that the prosecutor improperly argued that he was guilty of criminal trover in the second degree,[9] a crime he was not charged with committing. He goes on to state that his argument "must be viewed in the context of [his] basic argument that the definition of larceny relied on by the state, i.e., to dispose of property for the benefit of oneself or a third person . . . does not constitute larceny under the Connecticut [General] Statutes." According to the defendant, this is because "such a return of property to the owner is not a 'disposal' of it under § 53a-118 (a) (4) (B)."

---

[9] General Statutes § 53a-126b (a) provides: "A person is guilty of criminal trover in the second degree when, knowing that he is not licensed or privileged to do so, he uses the personal property of another without the consent of such owner, and such use results in damage to or diminishes the value of such property or subjects such owner to economic loss, fine or other penalty."

Although the defendant raises this claim in the prose-cutorial misconduct context, he essentially is making a sufficiency of the evidence claim with respect to the meaning of "intent to appropriate" under § 53a-118 (a) (4) (B). The defendant cannot persuade us to revisit the sufficiency issue because our Supreme Court already has found that there was sufficient evidence for the defendant's conviction of larceny in the third degree. See *State* v. *Spillane*, 257 Conn. 750, 760, 778 A.2d 101 (2001). Moreover, we will not ignore the Supreme Court's express rejection of the defendant's argument with respect to the "intent to appropriate" provision of the statute.

In noting that § 53a-118 (a) (4) (B) has no permanency requirement, the Supreme Court stated that "[t]he state did not claim that the defendant intended to keep the vehicle, but rather that the vehicle was improperly towed so that the defendant's company could collect the $148 benefit." *State* v. *Spillane*, supra, 255 Conn. 761. In addition, after determining that the fundamental issue was "whether the defendant towed Lewis' car wrongfully from the street or lawfully from the parking lot," the court stated that "the wrongfulness of the tow was disputed, not whether the defendant disposed of the vehicle for a $148 benefit. The defendant did not contest the evidence that he towed the vehicle; indeed, the defendant's own witnesses corroborated that fact. Similarly, the defendant did not contest the fact that Walnut Street Services, Inc., collected a $148 fee for the return of the vehicle." Id., 758. Finally, in reconsidering the defendant's sufficiency of the evidence claim, the Supreme Court specifically stated that the jury "reasonably could have found that the defendant towed the vehicle in order to obtain the $148 benefit." *State* v. *Spillane*, supra, 257 Conn. 760.

Thus, it is fair to say that the Supreme Court has stated more than once that disposing of the vehicle for

a $148 benefit was sufficient to satisfy the element of intent "to dispose of the property for the benefit of oneself or a third person" under § 53a-118 (a) (4) (B). The Supreme Court, therefore, has indicated that the state's theory of the case fully corresponded to the crime charged.

Likewise, we continue to adhere to the view expressed in our earlier opinion that the state's summation was consonant with the "intent to appropriate" theory of larceny. Indeed, in determining which subsection of larceny was at issue, we stated that the prosecution proceeded under the "appropriation" form and that "defense counsel did not then or thereafter at trial take issue with the state's theory on the first count. He did not claim surprise but proceeded to go forward with his own case." *State* v. *Spillane*, supra, 54 Conn. App. 213. We further pointed out that "[d]uring its argument to the jury, the state argued that the defendant, in towing the Lewis car, was motivated by the money that would be obtained by towing the car and then charging the owner money to get the car back." Id. We therefore believe that in claiming that "neither the Appellate Court nor the Supreme Court engaged in any discussion of what the legislature meant by the use of [the] language [to dispose of the property for the benefit of oneself or a third person]," the defendant misreads the record.

We conclude that there is no merit to the defendant's claim that the prosecutor's argument in her summation urged the jury to "convict him of a crime with which he was not charged." Accordingly, the defendant has failed to show that the prosecutor's remarks were improper. In so concluding, we observe that the defendant cites no authority for claiming prosecutorial misconduct on that basis. We also note that in its final instructions to the jury, the trial court stated that it was the court's function, not counsel's, to explain to the

jury the applicable law and that what it says in that regard is binding on the jury.[10] We therefore must presume that the jury knew the applicable law and convicted the defendant on that basis. See *State* v. *Sauris,* 227 Conn. 389, 403, 631 A.2d 238 (1993) ("[j]urors are presumed to have followed the instructions of the court as to the law in the absence of a clear indication to the contrary").[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The trial court instructed the jury on the applicable law in relevant part as follows: "Our statute defines larceny as follows: A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds the property from an owner. Each of the following elements must be proved by the state beyond a reasonable doubt. First, that the defendant wrongfully took, obtained or withheld property from an owner. And second, that at the time the defendant obtained the property, he intended to appropriate that property to himself or a third person. . . . The state must prove to you beyond a reasonable doubt that first, [the defendant] wrongfully took, obtained or withheld property from the owner and at the time he did that, he intended to appropriate the same to himself or a third person."

[11] In his supplemental brief, the defendant also argues that the trial court overlooked § 53a-119 (8) and therefore plain error review is necessary. We disagree. Section 53a-119 (8) provides in relevant part that "[a] person is guilty of larceny by receiving stolen property if he receives, retains or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ." The problem with the defendant's argument here is that § 53a-119 (8) does not require that the property be disposed of "for the benefit of oneself or a third person" as does § 53a-118 (a) (4) (B), and, therefore, it is not applicable. Accordingly, the trial court did not overlook an applicable statute.

The defendant's other remaining arguments are also without merit. His reference to the definition of "conversion" in Black's Law Dictionary (7th Ed. 1999) provides him no support because in the present case we are concerned with the proper construction of a statute, not a common-law term. Likewise, the defendant's reliance on *State* v. *Sawyer,* 95 Conn. 34, 110 A. 461 (1920), is inapposite because that case concerned a definition of larceny that was superseded by the enactment of the Penal Code in 1969.